### No. 6476.

E. F. GOLSAN & CO. vs. J. R. POWELL. ON RULE AGAINST GARNISHEES.

Until notice of the transfer of a claim has been given to the debtor, such claim, though transferred, is liable to attachment by the creditors of the transferrer.

It was the *assignment*, and not the *adjudication* in bankruptcy by the bankrupt court, under the late law of Congress, which dissolved attachments levied within the four preceding months.

A creditor of the bankrupt cannot be heard to contend in the State courts that the attachment levied by another creditor was dissolved by the bankruptcy of the common debtor, because, if such were the case, the property attached could only be claimed by the assignee of the bankrupt, and not by the contending creditor.

APPEAL from the Sixth District Court, parish of Orleans. *Saucier,* J.

---

Bayne & Renshaw for plaintiffs and appellees:

First—As to third persons, the transfer of a debt can have effect only from the date of notification thereof to the debtor, and until the notification, the debt can be attached notwithstanding the transfer. 11 Rob. 326 ; 17 An. 258 ; C. C. 2643 ; 7 An. 620 ; 20 An. 96 ; 9 An. 226.

Second—By the bankrupt law, U. S. R. S. sec. 5044, it is the *assignment,*

and not the adjudication in bankrupcy, which may dissolve an attachment. 13 Nat. Bankr. Register, pp. 252, 253 ; 21 Wall. 646 ; 91 U. S. 524.

Lacey & Butler for A. N. Sutton, appellant :

First—When the attachment of plaintiffs was issued, there was nothing belonging to their debtor in the hands of the garnishee. The claim sought to be seized had long before been transferred to this appellant, who, for a valid consideration, had become the owner of it.

Second—Plaintiffs' attachment was *ipso facto* dissolved by the bankruptcy of their debtor. This court cannot inquire into or pass upon the merits of that attachment. The matter is not before it, and it can only, in this respect, administer the Act of Congress. *In re* Ellis, 1st Bankr. Register, p. 154 ; *in re* Housberger vs. Zibelin, 2 Bank. Reg. 33 ; *in re* Bowman vs. Harding, 4 Bank. Reg. 5 ; *in re* Morgan vs. Campbell, 11 Bank. Reg. 533 ; and others.

Third—Plaintiffs having allowed this appellant to prosecute the suit against the insurance company at his own expense and trouble, while they were sleeping upon their rights, are now estopped from claiming the benefit of his efforts: Herman on Estoppel, p. 337 ; 25 Illinois, 377 ; 1 Kentucky (Bush) 565, 599 ; 14 Wisconsin, 285 ; 9 Wallace, 274 ; 5 Rob. 518 ; 1 An. 11 ; 5 An. 107 ; 6 An. 349 ; 9 An. 528 ; 12 An. 473.

Gibson, Hall & Montgomery for the garnishee.

----

The opinion of the court was delivered by

BERMUDEZ, C. J.    J. R. Powell sued the Factors' & Traders' Insurance Company in March, 1870, to recover $3453 97. Judgment was rendered against him, in the lower court, but in his favor on appeal for the amount claimed.

Pending the litigation, namely, on May 7th, 1872, the plaintiffs sued Powell, attaching in the hands of the insurance company what assets they had under their control, belonging to Powell, and they recovered judgment against him for $4183 in December, 1875, with privilege.

At the time the attachment issued, interrogatories were propounded to the insurance company, whose president answered, on May 16th, 1872, so as to make the liability of the corporation to Powell contingent on the decision of his suit against it.

The judgment rendered by the Supreme Court, in December, 1875, in favor of Powell, against the company, for $4183, having become executory, Golsan & Co. took a rule, in January, 1876, on the company

to show cause why they should not pay in court the amount of the judgment for distribution.

The company answered that on December 10th, 1871, Powell had assigned his interest in this suit against them to A. N. Sutton, and that the same interest had been seized by attachment in two stated cases. The company asked that Sutton and the attaching creditors be made parties.

Sutton resisted payment by the company to Golsan & Co. on the following grounds:

First. He was the transferree and subrogee of Powell's rights.

Second. The attachment of Golsan & Co., made two days previous to his notification to the company of the transfer and subrogation by Powell in his favor of his interest in his suit against them, had been dissolved by the declaration of Powell in bankruptcy on June 22d, 1872.

On the trial of the rule, it was proved that on May 9th, 1872, Sutton had been recognized by the court, in the case of Powell against the company, as subrogated to the rights therein of the plaintiff; and that the next day, May 10th, 1872, the company was notified by the sheriff of the motion and order declaring the transfer and subrogation.

The attachment, in the case of Golsan against the insurance company, was served on May 7th, 1872, on the insurance company, while notice of the transfer of Powell's interest to Sutton was given three days later, on May 10th, 1872.

"The transferree is only possessed, as it regards third persons, after notice has been given to the debtor of the transfer having taken place." C. C. 2643 (2613).

"If previous to notice having been given of the transfer, to the debtor, either by the transferrer or by the transferree, the debtor should have made any payment to the transferrer, the debtor is discharged of the debt." C. C. 2644 (2614); 11 R. 326; 17 A. 258; 24 A. 623.

The seizure by attachment, made by Golsan & Co., who subsequently recovered judgment for their claim against Powell, gave them a preference dating back to May 7th, 1872, over Sutton, whose transfer was only signified three days later, on the 10th of May following, and who only acquired what might be left, which, as the facts turned out, happens to be nothing.

On the second defense, Sutton offered to introduce in evidence the petition, schedule, and *order* in the bankruptcy proceedings of J. R. Powell, before the United States District Court for the District of Louisiana,—to show that Powell had been adjudicated a bankrupt, and that the debt due by the insurance company had not been placed by Powell on his schedule.

The offer was objected to on two grounds :

1.   The evidence was irrelevant.

2.   A creditor cannot urge the adjudication in bankruptcy of his debtor, as against another creditor, litigating with him, as a bar to the recovery by that last creditor—for the reason that such plea can be made by the assignee only, who alone represents the assets and the creditors of the insolvent.

The objections were sustained and the evidence ruled out.   A bill of exception was returned, but the proceedings were not annexed to it. The bill says that the petition, schedule, and ORDER, in the bankruptcy proceedings, were offered ; but does not set forth the *nature* of that *order*.

We are, therefore, unable to know from the bill itself whether the order was one of *assignment*.   This knowledge was important, for it is the assignment, and not the adjudication, which passes the assets to the assignee, for the benefit of the creditors, and which may dissolve the attachments levied on the property of the insolvent within the four months preceding.

13 Nat'l Bankruptcy Register, 252.

9 Nat'l Bankruptcy Register, 356.

21 Wall. 646 ; 91 U. S. 524.

In the last case the Supreme Court of the United States, however, said :

" The opinion seems to have been quite prevalent in many quarters at one time, that, the moment a man is declared bankrupt, the district court which has so adjudged draws to itself by that act, not only all control of the bankrupt's property and credits, but that no one can litigate with the assignee contested rights, in any other court, except, in so far as the Circuit Courts have jurisdiction, and that other courts can proceed no further in suits of which they had at that time full cognizance ; and it was a prevalent practice to bring any person, who contended with the assignee any matter growing out of disputed rights of property, or of contracts, into the bankrupt court, by the service of a rule to show cause, and to dispose of their rights in a summary way.

" *This court has steadily set its face against this view.*"

" The debtor of a bankrupt, or the man who contests the right to real or personal property with him, *loses none of those rights* by the bankruptcy of his adversary."

On the assumption, however, that the attachment assailed was dissolved as claimed, Sutton could not be heard to make that objection, as it could not benefit him at all.   In such a case, the fund in dispute would accrue, not to Sutton, but to the mass of the creditors of Powell, whom the assignee *alone* represents.   This functionary has not appeared in these proceedings to interpose any impediment to the exercise of the

pretensions of Golsan & Co. as asserted in this case. His absence cannot be supplied by Sutton. The fund must therefore be applied in the same manner as it would clearly have been had Powell never gone into bankruptcy.

It is therefore ordered that the judgment of the lower court be affirmed with costs.